UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIAN GAHIE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 10-1531-AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Plaintiff Marian Gahie filed a complaint on March 2, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on April 7, 2010, and February 22, 2012.  (Dkt. Nos. 6, 17.)  On January 14, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

On January 3, 2007, Gahie filed an application for disability insurance benefits, alleging an onset date of December 13, 2003. Administrative Record ("AR") 15. The application was denied initially and upon reconsideration. *Id.*

An Administrative Law Judge ("ALJ") conducted a hearing on March 17, 2009, at which Gahie and a vocational expert ("VE") testified.[1] AR 15. On July 7, 2009, the ALJ issued a decision denying benefits. AR 12-21. On November 25, 2009, the Appeals Council denied Gahie's request for review. AR 4-7.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation and quotation marks omitted); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a

---

[1] The AR contains two hearing transcripts that appear to be substantially identical. AR 22-36, 37-53. The only differences between the transcripts appear to be the date and location of the hearings, and the names of the presiding ALJs and vocational experts. AR 22-36, 37-53. The parties do not challenge the accuracy of these transcripts or the ALJ's statement that the hearing was held before him on March 17, 2009, in Palmdale, California, and that VE Ms. Metildi testified. AR 15.

whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.  Disability

A person is disabled and eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  Presumption of Continuing Disability

The principle of *res judicata* applies to administrative decisions, albeit less rigidly than in judicial proceedings. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). The first ALJ's "findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some *res judicata* consideration in subsequent proceedings." *Id.* at 694. In a subsequent application for benefits, the claimant "must prove 'changed circumstances.'" *Id.* at 693. Changed circumstances may include a change in age category, a claim of impairment not considered in the previous application(s), or an increase in the severity of an existing impairment. *Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1995).

In this case, the ALJ noted that a prior ALJ issued a decision dated December 12, 2003 that limited Gahie to "light work that would not require more than occasional climbing and crawling and no repetitive or frequent neck extension." AR 16. With this residual functional capacity ("RFC"), Gahie could

3

perform her past relevant work as a grant writer/coordinator. *Id.* The ALJ found that Gahie had not shown changed circumstances. *Id.*

### C. The ALJ's Findings

The ALJ found that Gahie's date last insured was December 31, 2006. AR 17. Gahie had the severe impairment of "cervical spine pain status post C6-7 laminoplasty." AR 18. She did not have an impairment or combination of impairments that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

Gahie had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)[2] that "would require [no more than] occasional climbing and crawling and would not require repetitive or frequent neck extension with pain controlled by the use of an analgesic twice weekly." AR 18-19, 21. Gahie was able to perform her past relevant work as a grant writer/coordinator. AR 20-21.

### D. Listing 1.04A

Gahie argues that the ALJ failed to consider properly whether she met or equaled Listing 1.04A, "at least for a closed period until a reasonable amount of time after she recovered from her third spinal surgery performed in March of 2006." JS 4.

The claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

---

[2]Light work involves lifting no more than 20 pounds occasionally and 10 pounds frequently; and requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

4

"For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

Listing 1.04A requires a spine disorder resulting in compromise of a nerve root or spinal cord accompanied by (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) with sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The ALJ found Gahie's impairments did not meet or equal any listing. AR 18. Gahie had "full motor power of her extremities with normal sensation" and was "not precluded from using her upper extremities for gross and dexterous movements." *Id.* In September 2005, Dr. Riegler examined Gahie and found she had a "fairly well preserved" cervical spine range of motion, full ranges of motion of the thoracic and lumbar spine, and "5/5 motor power of all extremities with normal sensation." AR 19; 297. Gahie did not meet the third requirement of Listing 1.04A, i.e., motor loss with sensory or reflex loss.

Alternatively, Gahie argues that she met the listing after her March 2006 surgery. JS 4. The discharge notes indicate Gahie was advised to take "four to six weeks off work as well as gradual return to normal daily activity." AR 248. The ALJ reviewed Dr. Riegler's progress notes after March 2006 and concluded Gahie had normal motor power and sensation. AR 20. Dr. Riegler's progress notes dated April 2006 show 5/5 strength in Gahie's upper and lower extremities. AR 283. In June 2006, Dr. Riegler noted full flexion and extension, and good, slow, gradual progression with physical therapy. AR 281. In September 2006, Gahie reported having a setback three weeks earlier. Her pain was up and down (3/4 out of 10). However, Dr. Riegler noted strong hand grasp. AR 279.

The ALJ's findings were supported by substantial evidence. The ALJ did not err. "It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990). In *Gonzalez*, the Ninth Circuit found that the ALJ's summary of the medical evidence and the claimant's testimony was sufficient, even though the ALJ did not state what evidence supported the conclusion that the impairments did not meet or equal a listing. *Id.* at 1200-01.

Gahie further argues that she also suffers from chronic occipital and frontal headaches, and lower back pain supported by objective findings on MRI. JS 5. These arguments will be considered in connection with her remaining claims.

### E. The Opinions of the Treating Physician

Gahie argues that the ALJ improperly failed to give controlling weight to the opinions of her treating physician, Dr. Toft.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v.*

6

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and internal quotations omitted).

When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the (1) length of the treatment relationship and frequency of examination;[3] (2) nature and extent of the treatment relationship;[4] (3) amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6). The ALJ may disregard a treating physician's opinion that is brief and conclusionary in form with little in the way of clinical findings to support its conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Toft completed a "Lumbar and Cervical Spine Residual Functional Capacity Questionnaire" on December 5, 2008. AR 438-443. She diagnosed cervical stenosis and agoraphobia. AR 438. Gahie had tenderness in her neck, muscle spasm in her fingers, hands, quadriceps and trapeziuses; muscle

---

[3] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[4] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

7

weakness in her quadriceps, forearms and hands; intermittent spastic gait; sensory changes in the left ulnar nerve; reflex changes in her left arm and left knee; atrophy in her forearms, hands and quadriceps; motor loss in her quadriceps and arms; and reduced grip strength. AR 438, 440. Gahie suffered from headache pain at a severity of 10 out of 10 for 12 days per month. AR 439.

Dr. Toft opined that Gahie cannot walk a city block without rest or severe pain, cannot lift or carry any weight in a competitive work situation, can sit for 5 minutes at one time, can stand for 5 minutes at one time, and can sit and stand/walk for a total of less than 2 hours in an 8-hour day. AR 441-42. Gahie also required the abilities to shift positions at will and to take unscheduled breaks every 5 minutes that would last 10 to 30 minutes. AR 442. Gahie was precluded from all neck activities and overhead reaching. AR 442-43. Gahie would probably be absent for more than four days per month. AR 443.

The ALJ gave no weight to Dr. Toft's opinions because they were contradicted by objective medical evidence and to some extent Gahie's subjective allegations. AR 20. Gahie had never been diagnosed with agoraphobia. AR 20. Nor did Gahie testify to any agoraphobic symptoms. Moreover, Gahie testified she could walk for a mile, sit for an hour and stand for an hour. AR 20, 50. The ALJ further found that the medical record indicated Gahie had full ranges of motion of all extremities; walked with a slow but normal gait; had 5/5 motor power; and had not received treatment indicative of pain at a level of 10 out of 10. AR 20, 279, 297. Dr. Toft's notes never mentioned spastic gait. AR 20. Dr. Toft's progress notes made no findings regarding Gahie's motor strength, and gave no measurements or descriptions of muscle atrophy, which in any event were noted only for a few months after Gahie's surgery.[5] AR 20, 321

---

[5] The ALJ mistakenly stated that Dr. Toft reported weight loss of 101 pounds. AR 20. The ALJ may have misread Dr. Toft's handwriting, which appears to read "10 lbs." AR 438. This error is harmless. As the ALJ noted, Dr.

(August 2006), 325 (June 2006), 326 (April 2006), 331 (March 2006).  Her notes contain no mention of headache pain at a severity of 10 out of 10.  The ALJ's reasons for discounting Dr. Toft's opinions are supported by substantial evidence.

### F. Credibility

Gahie argues that the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptoms.  JS 14-15.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'  'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'"  *Id.* (emphasis in original, citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  The ALJ found that Gahie's medically determinable impairments could reasonably be expected to cause her symptoms.  AR 19.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  The ALJ made no finding of malingering.

---

Toft's records indicate a gain of 3 pounds.  AR 20.

9

"In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[6] quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

As discussed above, Gahie argues that she suffers from chronic occipital and frontal headaches, and lower back pain supported by objective findings on MRI. JS 5.

The ALJ found that Gahie's statements were not credible "to the extent they are inconsistent with the above residual functional capacity." AR 19. The

---

[6] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

10

ALJ appears to be have relied on three reasons: (1) the objective medical record; (2) pain controlled by medication; and (3) activities of daily living. AR 20.

Gahie testified that her past work as a grant writer required her to spend most of her time sitting at a desk and computer. AR 40-41.

Gahie testified that she takes Vicodin when her head pain is at a "mid-level" before it starts climbing to the level of 6-8 when she would become nauseous and start throwing up. AR 42. At that point, she has to stop her daily activities. *Id.* She cannot keep her head in one position to look at a computer screen or television. AR 43. On a good day, she can keep her head in a fixed position for an hour. On a bad day, she has a hard time even for 5 minutes. *Id.* The same would be true for looking left, right and down, although looking down causes the most pain. AR 43-44. Gahie testified that she has lost some grip strength in that her hand becomes fatigued. AR 44-45. She could not carry and move computer equipment, which weighed 10-15 pounds, for presentations. AR 47. She tried to take one class per semester but over time the reading, writing and driving would increase her pain intolerably. AR 45. She takes Vicodin 2 to 3 times per week when the pain is worse. AR 48.

Gahie testified that she does not have enough good days to work a full-time job. AR 47. She walks about a mile three days per week. AR 50. On a good day, she can sit upright in a chair and stand for an hour. AR 49-50. She can lift about 10 pounds. AR 51.

The ALJ's reliance on the objective medical record is not supported by substantial evidence. Dr. Jho examined Gahie in March 2006 and found that, although her initial upper extremity strength was very good, she was easily fatigued "most notably in the right grip strength as well as the deltoid and some extension of the right wrist." AR 249-50. In the period April-September 2006, Dr. Riegler notes Gahie's complaint that her neck pain is less than her head pain, and her back pain is less than both of them. AR 279. Her head pain increases to

6 of 10 with activity and can take hours to come back down.  Dr. Riegler found diffuse tenderness and cervical radiculopathy.  AR 279, 281, 283.  An MRI of the cervical spine in May 2006 indicated moderate to severe narrowing of the disc space at C5-6 and C6-7; clinical correlation advised for impingement on the proximal left C6 and C7 nerve roots; deformity of the cord at C5-6 and C6-7; and clinical correlation advised for central involvement of the C5 nerve roots.  AR 346.  The x-rays showed limitation of flexion and extension movement.  AR 348.  The state agency physician found limited reaching.[7]  AR 380.

        The ALJ's reliance on Gahie's ability to control her pain with Vicodin by using it a mid-pain level is supported by Gahie's testimony.  She testified that she does so two to three times per week.  AR 20, 48; *Bunnell*, 947 F.2d at 346 (ALJ may consider dosage and effectiveness of medication).  As the ALJ noted, on good days, she is able to walk a mile and care for her dogs.  AR 20.  However, this is not inconsistent with her testimony that her head pain prevents her from having enough good days to work a full time job.  AR 47.  The Commissioner is required to assess whether a claimant has the ability to work on a sustained basis.  *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); 20 C.F.R. § 404.1512(a).  "[O]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability."  *Lester*, 81 F.3d at 833.

        This matter is being remanded for reconsideration, for the period beginning March 2006, of Gahie's subjective testimony and the objective medical record supporting it at step four and, if appropriate, step five of the sequential analysis.

---

[7] Although the ALJ did not include a limitation on reaching in the decision, his hypothetical to the VE included a limitation to occasional overhead reaching.  AR 51.

# IV.
# **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 23, 2012

                                        ALICIA G. ROSENBERG
                                        United States Magistrate Judge